UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SHIRLEY SMITH, on behalf of and
as the parent and natural guardian of
RODDERRIC SMITH,

    Plaintiff,

vs.                                            Case no.: 4:07cv66 SPM/WCS

CITY OF GRETNA, GRETNA POLICE
DEPARTMENT, and RICKY L. REED,
individually,

    Defendants.
_____/

## DEFENDANT RICKY L. REED'S MOTION TO DISMISS

Defendant Ricky L. Reed ("Reed"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss plaintiff's complaint, as states:

1. This lawsuit stems from Rodderric Smith's ("Smith") July 27, 2005 arrest and detainment by Reed, a police officer for the City of Gretna, Florida ("the City"), and the City. [Plaintiff's complaint, ¶ 6].

2. Plaintiff alleges the following claims against Reed in his individual capacity:

    Count II:    Battery (Florida law)
    Count III:   Fourth Amendment violation (42 U.S.C. §1983)
    Count IV:   Intentional Infliction of Emotional Distress (Florida law)
    Count VII:  False Arrest / Imprisonment (Florida law)

3. However, Reed is entitled to qualified immunity from plaintiff arrest-related claims asserted via Count III.

4.  Additionally, since plaintiff claims Reed violated Smith's rights by spraying him with a "chemical agent" at the police department following his arrest, Count III must fail as detention-related claims are unrecognized under the Fourth Amendment.

WHEREFORE, plaintiff's complaint fails to state a claim upon which relief can be granted, as discussed below.

## MEMORANDUM OF LAW

### A. MOTION TO DISMISS STANDARD

Dismissal under Rule 12(b)(6) eliminates a pleading or portion of a pleading which fails to state a claim upon which relief can be granted. *See* FED.R.CIV.P. 12(b)(6). In deciding whether to dismiss, the court must accept as true all allegations and construe them in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 235, 94 S.Ct. 1683, 1686 (1974). Dismissal is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pautala Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238, 1240 (11th Cir. 1992) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)). If the facts alleged would allow recovery under any possible theory, the motion must be denied. *See Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992). The court is not required, however, to accept as true the plaintiff's legal conclusions. *See Solis-Ramirez v. U.S. Dep't. of Justice*, 758 F.2d 1426, 1429 (11th Cir. 1985) (*citing Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). On the contrary, the court may make its own determination of the legal issue[.]" *Solis-Ramirez* at 1429. Moreover, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."

*Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (*citing S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996).

### B. QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (*citing Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002)). "The purpose... is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Gonzalez* at 235 (*citing Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002)). "Because qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.' " *Id.* (*citing Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536 (1991). Thus, it is appropriate to apply qualified immunity at the dismissal stage if the complaint "fails to allege the violation of a clearly established constitutional right." *Id.* (citations omitted).

To determine the propriety of qualified immunity, conduct is evaluated under an "objective legal reasonableness" standard, and subjective intent is irrelevant. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000) (citations omitted). The Supreme Court has established a two-part test to determine the applicability of qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). First, the court must determine whether the plaintiff has

alleged the deprivation of a constitutional right. *Id.* Then, the court must determine whether plaintiff's right was clearly established at the time the alleged violation occurred. *Id.* A right is clearly established if the contours of the right are sufficiently clear a reasonable official would understand what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

### C. QUALIFIED IMMUNITY IN THE "EXCESSIVE FORCE" CONTEXT

The Fourth Amendment "encompasses the right to be free from the use of excessive force during an arrest." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). The Eleventh Circuit has provided the following standard of review for excessive force cases:

> [T]he 'reasonableness' inquiry... is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.

*Id.* at 1333.

Courts are "not to view the matter as judges from the comfort and safety of... chambers," but rather "must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction[.]" *Id.* at 1333-34; *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)("Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") (internal citation and quotation omitted).[1] Moreover, both the Supreme Court and the Eleventh

---

[1] Under both Florida and federal law, "a full custodial arrest is allowed even when the offense is only a misdemeanor." *Durruthy v. Pastor*, 351 F.3d 1080, 1093

4

Circuit have "recognized that the right to make an arrest... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Crosby* at 1334 (*quoting Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989)); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002)("the typical arrest involves some force and injury.").[2] Qualified immunity applies in excessive force cases "unless application of the standard would inevitably lead every reasonable officer in [the position of the defendant officer] to conclude the force was unlawful." *Nolin* at 1255 (internal citation and quotation omitted).[3]

## D. REQUIREMENT THAT A CONSTITUTIONAL RIGHT BE CLEARLY ESTABLISHED

Before qualified immunity is surrendered by an officer, he is entitled to fair and clear warning that the challenged conduct violates federally protected rights. *See Vinyard* at

---

(11th Cir. 2003)

[2] Because the inquiry is one of objective reasonableness, any "evil intentions" on the part of the officer "will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will good intentions make an objectively unreasonable use of force constitutional." *Jackson v. Sauls*, 206 F.3d 1156, 1170 (11th Cir. 2000).

[3] The determination of whether the force applied was reasonably proportionate to the need for that force involves a number of factors, including "the severity of the crime, whether the suspect pose[d] an immediate threat, and whether the suspect [was] resisting or fleeing." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997). A court must balance the "necessity of the use of force used against the arrestee's constitutional rights[.]" *Vinyard* at 1347 (11th Cir.2002); *see also Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (to determine if force was objectively reasonable, courts consider a variety of factors, including "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.") (internal citation and quotation omitted).

5

1350-51. *Vinyard* identified three categories of fair and clear warning: (1) where the conduct is so egregious that it violates the constitution on its face, regardless of the absence of authoritative case law; (2) where the conduct does not violate the constitution on its face but case law exists which can be applied broadly to various factual situations; and (3) where no broad case law applies but there exists precedent which is tied to the facts. *Id.*

The Eleventh Circuit has noted that generally no bright line exists for identifying when force is excessive; thus, the Circuit Court has concluded "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)(citation omitted). However, a narrow exception to the rule requiring particularized case law exists. *Id.* "When an excessive force plaintiff shows that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent... notwithstanding the lack of caselaw, the official is not entitled to the defense[.]" *Id.* (internal quotations and citations omitted); *Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir.), *cert. den.*, 540 U.S. 816, 124 S.Ct. 76 (2003).

To come within the exception, a plaintiff must show the conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point. *Reese v. Coxwell*, 2006 WL 680811, *8 (N.D. Fla. 2006). Under both the general rule and its narrow exception, therefore, "pre-existing law must dictate truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances for qualified immunity to

6

i. *"Reed grabbed him and unexpectedly slammed Plaintiff chest first onto the patrol car hood."*

First, plaintiff's "slammed Plaintiff chest first onto the patrol car hood" allegation does not rise to the level of the cases cited in *Reese v. Coxwell* (i.e. *Lee*, *Slicker* and *Smith*). Moreover, it is distinguishable from recent district court cases which have denied qualified immunity motions where an individual claimed he was, in some way, slammed onto the hood of a police car. *See, e.g., Ehly v. City of Philadelphia*, 2004 WL 2644392, *1 (E.D. Pa. 2004) (plaintiff alleged officer, "who weighed in excess of 250 pounds, used excessive force in restraining [a] 15-year old... when he bent Plaintiff over his... car... [the o]fficer... allegedly slammed Plaintiff's face into the hood of the car. Plaintiffs have presented unsworn testimony from a witness who observed that Plaintiff was already handcuffed at the time this incident occurred."); *Reynolds v. City of Mattawan*, 2006 WL 1361673, *1 (W.D. Mich. 2006) (plaintiff claimed "Sergeant Jacobs... grabbed Mr. Reynolds [who was also held by Officer Weber] by the back of his head or the base of his ponytail... [and] slammed Mr. Reynolds' face quickly and violently into the hood of the car at least twice.... Sergeant Jacobs then [again] violently slammed Mr. Reynolds' face directly onto the hood of the car..., putting a large dent into the hood.... During this entire time, Mr. Reynolds was not resisting."); *Myers v. James*, 2004 WL 2988489, *1 (E.D. La. 2004) (plaintiff alleged he "informed the police that his identification was in his car and took a step to retrieve it. At that point, Officer Zoller put handcuffs on the plaintiff's left wrist, 'slammed' him onto the hood of Ms. Preston's car "while Officer James grabbed and twisted [the plaintiff's] right arm and push[ed][him] harder into [Ms. Preston's] car. Officer Zoller emptied the contents of the plaintiff's pockets onto the hood of the car. Then Officer James shouted at the

8

plaintiff to spread his legs. Officer Zoller patted him down, and in doing so, grabbed the plaintiff's testicles and asked him if he liked the way that felt.").

Here, there is no allegation plaintiff was restrained prior to being "slammed" onto the car. Morever, plaintiff alleges her son "objected" to Reed's actions—a factor absent from the above-noted cases. Plaintiff further alleges only Smith's chest, and not his face, slammed into the car's hood. Also, plaintiff does not allege any other officers were involved in the incident. Rather, the complaint indicates Smith was "socializing with acquaintances" upon his encounter with Reed. [Plaintiff's complaint, ¶ 6]. Under these circumstances, as alleged, it would be difficult for a reasonable police officer to understand what he is doing violates one's Fourth Amendment rights.

    ii.    *"While plaintiff was handcuffed, Reed began choking Plaintiff in a strangulation fashion, using both hands."*

One can reasonable infer from the complaint Smith was subjected to some form of neck restraint—a "choke hold"—by Reed. The Eleventh Circuit has not held choke holds are, as a matter of law, deadly force. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (holding that a choke hold, although unnecessary, was not, as a matter of law, unreasonable under the circumstances, and finding qualified immunity). Additionally, other courts have granted qualified immunity in the "choke hold" context. *See, e.g., Ferguson v. Leiter*, 220 F.Supp.2d 875, 883-84 (N.D. Ohio 2002) (officer's actions in imposing neckhold was not contrary to clearly established standards, and thus officer was entitled to qualified immunity; neckhold, while alleged to have obstructed parolee's breathing, did not cause him to lose consciousness or pass out, did not cause damage to his trachea or larynx, and was administered for only very brief period of time[.]), *see also*

9

*Rudolph ex rel. Williams v. Lowndes County Bd. of Educ.*, 242 F.Supp.2d 1107, 1123 (M.D. Ala. 2003) (Sheriff entitled to qualified immunity from student's excessive force claim based on sheriff's failure to intervene in use of force by officers, which occurred when officers allegedly choked student while trying to stop student from swallowing evidence and/or potentially harmful substance he had retrieved from his vehicle during school drug sweep; sheriff did not have fair warning that his failure to intervene was a constitutional violation)..

Choke hold cases where qualified immunity is denied appear to involve clearly egregious circumstances, which are wholly absent here. That is, they involve conduct, as stated in *Willingham v. Loughnan, supra,* "so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point." *See, e.g., Los Angeles v. Lyons*, 461 U.S. 95, 115, 103 S.Ct. 1660 (1983)(Marshall, J., dissenting) ("plaintiff allegedly was subjected to a choke hold until he blacked out, and when he regained consciousness, he was lying face down on the ground, choking, gasping for air, spitting up blood, and had urinated and defecated"); *Calhoun v. Thomas*, 360 F.Supp.2d 1264, 1278 (M.D. Ala. 2005) (officers had fair warning of the unconstitutionality of their conduct, and thus not entitled to qualified immunity; they allegedly choked and beat an arrestee, who was restrained and posed no threat, punched him in his gunshot wound, and slammed him into a door several times not for the purpose of subduing him or protecting themselves, but to force him to make a statement, and, as they explicitly told him, to make him suffer as the robbery and shooting victim suffered).

Here, plaintiff does not allege her son lost consciousness, suffered any permanent injury due to being choked, or was choked for an extended period of time. These allegations

fall far short of *Lyons* and *Calhoun*, and in light of the above-noted case law, a reasonable officer in Reed's position could not have know his or her actions violated the Fourth Amendment.

### F. PLAINTIFF'S CLAIM OF EXCESSIVE FORCE VIS-A-VIS USE OF A "CHEMICAL AGENT" SPRAY AT THE POLICE STATION UNRECOGNIZED UNDER THE FOURTH AMENDMENT

Where a plaintiff's excessive-force claim arises in the context of an arrest, investigatory stop, or other "seizure" of his person, that claim "is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The Fourth Amendment covers only 'searches and seizures.' " *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). An arrest is "the quintessential 'seizure of the person' under [the] Fourth Amendment." *California v. Hodari*, 499 U.S. 621, 624-26 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, *even when it is ultimately unsuccessful.*"). Otherwise, a pre-conviction claim of excessive force or abusive governmental treatment—a claim that is not "covered by" the Fourth Amendment—will lie under the Due Process Clause of the Fourteenth Amendment. *Id.* at 395 n. 10; *County of Sacramento* at 843.

Here, plaintiff alleges Smith "was transported to the Police Department, and while handcuffed, Reed continued the outrageous attack on [Smith] by spraying him in the face with a chemical agent[.]" [Plaintiff's complaint, ¶ 6]. At this point, plaintiff seizure, or the "laying on of hands or application of physical force to restrain movement" was complete. See *Hodari* at 626. Indeed, as noted, plaintiff claims Smith was handcuffed when Reed sprayed him, while at the police station. Thus, the Fourth Amendment is inapplicable to

11

plaintiff's "chemical spray," claim, and Count III, for this additional reason, fails to state a claim upon which relief can be granted.

### G. CONCLUSION

Plaintiff's complaint fails to state a claims upon which relief can be granted since (1) Reed is entitled to qualified immunity vis-a-vis plaintiff's arrest-related claims, and (2) the Fourth Amendment offers no recourse for plaintiff's detention-related claims. Thus, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss plaintiff's complaint.

Respectfully submitted this 27th day of February, 2007.

**BELL & ROPER, P.A.**
2816 E. Robinson St.
Orlando, Florida 32803
(407) 897-5150 - phone
(407) 897-3332 - fax

ATTORNEYS FOR DEFENDANT
RICKY L. REED

*/s/ Dale A. Scott*

MICHAEL J. ROPER, ESQ.
Florida Bar No.: 0473227
Mroper@bellroperlaw.com
DALE A. SCOTT, ESQ.
Florida Bar No.: 0568821
Dscott@bellroperlaw.com

### CERTIFICATE OF SERVICE

I CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail on this 27th day of February, 2007 to **Marie A. Mattox, Esq.**, 310 E. Bradford Rd., Tallahassee, FL 32303, and **William Warner, Esq.**, The Warner Law Firm, P.A., P.O. Box 1820, Panama City, FL 32402-1820.

*/s/ Dale A. Scott*
Attorney

12